GMP:MPR/CRH/RCH
F. #2015R02080/OCDETF #NYNYE-801

FILED
CLERK

2016 DEC 22   AM 10: 12

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – –X

UNITED STATES OF AMERICA

- against -



S U P E R S E D I N G
I N D I C T M E N T

Cr. No. 16-241 (S-2) (CBA)
(T. 21, U.S.C., §§ 841(b)(1)(A)(i),
841(b)(1)(A)(ii)(II), 841(b)(1)(A)(vii),
841(b)(1)(A)(viii), 846, 848(a), 848(b),
848(c), 853(a), 853(p), 959(d),
960(b)(1)(A), 960(b)(1)(B)(ii),
960(b)(1)(G), 960(b)(1)(H) and 963; T. 18,
U.S.C., §§ 924(c)(1)(A)(i), 924(c)(1)(A)(ii),
924(c)(1)(A)(iii), 924(d)(1), 982(a)(1),
982(b)(1), 1956(h), 2, 3238 and 3551
et seq.; T. 28, U.S.C., § 2461(c))



JOSE DAGOBERTO CORTEZ PEREZ,
  also known as "D.C.P.,"





Defendants.

-----------------X

THE GRAND JURY CHARGES:

### INTRODUCTION

At all times relevant to this Superseding Indictment, unless otherwise indicated:

1.     From at least June 2013 until December 2016, the defendants

3



JOSE DAGOBERTO CORTEZ PEREZ, also known as

were members of an international drug trafficking organization led by

also known as ██ (the "██ DTO").

2.      The ██ DTO operated a vast narcotics transportation network responsible for the manufacture and importation from Mexico into the United States of multi-ton quantities of heroin, methamphetamine and marijuana. The ██ DTO also was responsible for the shipment of multi-ton quantities of cocaine from South America through Central America and Mexico to the United States. The vast majority of drugs trafficked by the ██

4

DTO were imported into United States, where the drugs were consumed. The ▇ DTO used corruption as a means and method of achieving its goals.

      3.     The ▇ DTO's drug sales in the United States generated millions of dollars in profit. The drug proceeds were then laundered back to Mexico; often the drug money was physically transported from the United States to Mexico through clandestine means.

      4.     The ▇ DTO had a structure that included numerous members, including: (a) the leadership of the ▇ DTO, who were the ultimate decision makers in the organization with respect to its drug trafficking and money laundering activities, as well as its corruption and enforcement activities undertaken to preserve and protect its illegal activities; (b) security personnel, who protected the leadership of the ▇ DTO and engaged in violent acts to further the goals of the organization; (c) plaza bosses, who controlled certain territories for the ▇ DTO and were responsible for transporting drugs through those territories; (d) transporters, such as boat crews, pilots and truck drivers, who transported drugs from Colombia through Mexico and into the United States; and (e) money launderers, who funneled drug proceeds from the United States back to Mexico.

      5.     The ▇ DTO was engaged in a battle with the Sinaloa Cartel, which was one of Mexico's largest and most violent drug cartels, and other Mexican drug trafficking organizations for control of certain areas of Mexico, including Mazatlán, Sinaloa, Mexico and Tepic, Nayarit, Mexico. As part of the ▇ DTO's efforts to secure this territory and to further its drug trafficking activities, the leaders of the ▇ DTO employed "sicarios," or hitmen, who

carried out numerous acts of violence, including murders, assaults, kidnappings and acts of

torture. The leaders of the ███ DTO directed and ordered these acts of violence for a variety

of reasons, including but not limited to:

(a)     Promoting and enhancing the prestige, reputation and position of

the ███ DTO with respect to rival criminal organizations;

(b)     Preserving and protecting the power, territory and criminal

ventures of the ███ DTO;

(c)     Enforcing discipline amongst its members and associates by

punishing disloyalty and failure; and

(d)     Protecting members of the ███ DTO from arrest and prosecution

by silencing potential witnesses and retaliating against anyone who provided information or

assistance to law enforcement authorities.

### COUNT ONE
(Continuing Criminal Enterprise)

6.     The allegations contained in paragraphs one through five are realleged

and incorporated as if fully set forth in this paragraph.



6

















14









## COUNT TWO
(International Heroin, Cocaine, Methamphetamine and
Marijuana Manufacture and Distribution Conspiracy)

26. The allegations contained in paragraphs one through five are realleged

and incorporated as if fully set forth in this paragraph.

27. In or about and between June 2013 and December 2016, both dates being

approximate and inclusive, within the extraterritorial jurisdiction of the United States, the

defendants  JOSE

DAGOBERTO CORTEZ PEREZ, also known as "D.C.P.,"

together with

others, did knowingly and intentionally conspire to manufacture and distribute one or more

controlled substances, intending, knowing and having reasonable cause to believe that such

substances would be unlawfully imported into the United States from a place outside thereof,

which offense involved: (a) a substance containing heroin, a Schedule I controlled substance;

(b) a substance containing cocaine, a Schedule II controlled substance; (c) a substance

containing methamphetamine, a Schedule II controlled substance; and (d) a substance

containing marijuana, a Schedule I controlled substance, contrary to Title 21, United States

Code, Sections 959(a) and 960(a)(3). The amount of heroin involved in the conspiracy

attributable to each defendant as a result of his or her own conduct, and the conduct of other

conspirators reasonably foreseeable to him or her, was at least one kilogram or more of a

substance containing heroin. The amount of cocaine involved in the conspiracy attributable to

each defendant as a result of his or her own conduct, and the conduct of other conspirators

reasonably foreseeable to him or her, was at least five kilograms or more of a substance

containing cocaine. The amount of methamphetamine involved in the conspiracy attributable

20

to each defendant as a result of his or her own conduct, and the conduct of other conspirators

reasonably foreseeable to him or her, was at least 500 grams or more of a mixture or substance

containing methamphetamine. The amount of marijuana involved in the conspiracy

attributable to each defendant as a result of his or her own conduct, and the conduct of other

conspirators reasonably foreseeable to him or her, was at least 1,000 kilograms of a substance

containing marijuana.

(Title 21, United States Code, Sections 963, 960(b)(1)(A), 960(b)(1)(B)(ii),

960(b)(1)(G), 960(b)(1)(H) and 959(d); Title 18, United States Code, Sections 3238 and 3551

et seq.)

COUNT THREE
(Heroin, Cocaine, Methamphetamine and
Marijuana Importation Conspiracy)

28.     The allegations contained in paragraphs one through five are realleged

and incorporated as if fully set forth in this paragraph.

29.     In or about and between June 2013 and December 2016, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants



 JOSE DAGOBERTO CORTEZ PEREZ, also known as "D.C.P.,"

together with others, did knowingly and intentionally conspire to import a controlled substance into the United States from a place outside thereof, which offense involved: (a) a substance containing heroin, a Schedule I controlled substance; (b) a substance containing cocaine, a Schedule II controlled substance; (c) a substance containing methamphetamine, a Schedule II controlled substance; and (d) a substance containing marijuana, a Schedule I controlled substance,

22

contrary to Title 21, United States Code, Sections 952(a) and 960(a)(1). The amount of heroin involved in the conspiracy attributable to each defendant as a result of his or her own conduct, and the conduct of other conspirators reasonably foreseeable to him or her, was at least one kilogram or more of a substance containing heroin. The amount of cocaine involved in the conspiracy attributable to each defendant as a result of his or her own conduct, and the conduct of other conspirators reasonably foreseeable to him or her, was at least five kilograms or more of a substance containing cocaine. The amount of methamphetamine involved in the conspiracy attributable to each defendant as a result of his or her own conduct, and the conduct of other conspirators reasonably foreseeable to him or her, was at least 500 grams or more of a mixture or substance containing methamphetamine. The amount of marijuana involved in the conspiracy attributable to each defendant as a result of his or her own conduct, and the conduct of other conspirators reasonably foreseeable to him or her, was at least 1,000 kilograms of a substance containing marijuana.

(Title 21, United States Code, Section 963, 960(b)(1)(A), 960(b)(1)(B)(ii), 960(b)(1)(G) and 960(b)(1)(H); Title 18, United States Code, Sections 3551 et seq.)

## COUNT FOUR
### (Heroin, Cocaine, Methamphetamine and Marijuana Distribution Conspiracy)

30. The allegations contained in paragraphs one through five are realleged and incorporated as if fully set forth in this paragraph.

31. In or about and between June 2013 and December 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the

23

defendants 

JOSE DAGOBERTO CORTEZ PEREZ, also known as "D.C.P.,"

together with

others, did knowingly and intentionally conspire to distribute and possess with intent to distribute a controlled substance, which offense involved: (a) a substance containing heroin, a Schedule I controlled substance; (b) a substance containing cocaine, a Schedule II controlled substance; (c) a substance containing methamphetamine, a Schedule II controlled substance; and (d) a substance containing marijuana, a Schedule I controlled substance, contrary to Title 21, United States Code, Section 841(a)(1). The amount of heroin involved in the conspiracy attributable to each defendant as a result of his or her own conduct, and the conduct of other conspirators reasonably foreseeable to him or her, was at least one kilogram or more of a substance containing heroin. The amount of cocaine involved in the conspiracy attributable to each defendant as a result of his or her own conduct, and the conduct of other conspirators reasonably foreseeable to him or her, was at least five kilograms or more of a substance containing cocaine. The amount of methamphetamine involved in the conspiracy attributable to each defendant as a result of his or her own conduct, and the conduct of other conspirators reasonably foreseeable to him or her, was at least 500 grams or more of a mixture or substance containing methamphetamine. The amount of marijuana involved in the conspiracy attributable to each defendant as a result of his or her own conduct, and the conduct of other

25

conspirators reasonably foreseeable to him or her, was at least 1,000 kilograms of a substance containing marijuana.

(Title 21, United States Code, Sections 846, 841(b)(1)(A)(i),

841(b)(1)(A)(ii)(II), 841(b)(1)(A)(vii) and 841(b)(1)(A)(viii); Title 18, United States Code, Sections 3551 et seq.)

## COUNT FIVE
(Use of Firearms in Furtherance of Drug Trafficking)

32.     The allegations contained in paragraphs one through five are realleged and incorporated as if fully set forth in this paragraph.

33.     In or about and between June 2013 and December 2016, both dates being approximate and inclusive, within the extraterritorial jurisdiction of the United States, the

defendants





JOSE

DAGOBERTO CORTEZ PEREZ, also known as "D.C.P.,"

together with

others, did knowingly and intentionally use and carry one or more firearms, during and in
relation to one or more drug trafficking crimes, to wit: the crimes charged in Counts One
through Four, and did knowingly and intentionally possess such firearms in furtherance of said
drug trafficking crimes, one or more of which firearms was brandished and discharged.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), 924(c)(1)(A)(ii),
924(c)(1)(A)(iii), 2 and 3551 et seq.)

27

<u>COUNT SIX</u>
(Conspiracy to Launder Narcotics Proceeds)

34.     The allegations contained in paragraphs one through five are realleged

and incorporated as if fully set forth in this paragraph.

35.





## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT ONE

36.    The United States hereby gives notice to the defendants charged in Count

One that, upon their conviction of such offense, the government will seek forfeiture in

accordance with Title 21, United States Code, Section 853(a), which requires any person

convicted of such offense to forfeit: (a) any property constituting, or derived from, any

proceeds obtained directly or indirectly as the result of such offense; (b) any property used, or

intended to be used, in any manner or part, to commit, or to facilitate the commission of, such

29

offense; and (c) any of their interest in, claims against, and property or contractual rights affording a source of control over the continuing criminal enterprise, including but not limited to at least a sum of approximately \$250 million in United States currency.

37. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 21, United States Code, Sections 853(a) and 853(p))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS TWO, THREE AND FOUR

38. The United States hereby gives notice to the defendants charged in Counts Two, Three and Four that, upon their conviction of any such offenses, the government will seek forfeiture in accordance with Title 21, United States Code, Section 853(a), which requires any person convicted of such offenses to forfeit: (a) any property constituting, or

30

derived from, any proceeds obtained directly or indirectly as the result of such offenses, and

(b) any property used, or intended to be used, in any manner or part, to commit, or to facilitate

the commission of, such offenses, including but not limited to at least a sum of approximately

$250 million in United States currency.

          39.     If any of the above-described forfeitable property, as a result of any act

or omission of the defendants:

          (a)     cannot be located upon the exercise of due diligence;

          (b)     has been transferred or sold to, or deposited with, a third party;

          (c)     has been placed beyond the jurisdiction of the court;

          (d)     has been substantially diminished in value; or

          (e)     has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek forfeiture of any other property of the defendants up to the value of the forfeitable

property described in this forfeiture allegation.

        (Title 21, United States Code, Sections 853(a) and 853(p))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT FIVE

          40.     The United States hereby gives notice to the defendants charged in Count

Five that, upon their conviction of such offense, the government will seek forfeiture in

accordance with Title 18, United States Code, Section 924(d)(1) and Title 28, United States

Code, Section 2461(c), which require the forfeiture of any firearm or ammunition involved in or used in any knowing violation of Title 18, United States Code, Section 924.

41.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)    cannot be located upon the exercise of due diligence;

(b)    has been transferred or sold to, or deposited with, a third party;

(c)    has been placed beyond the jurisdiction of the court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 924(d)(1); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT SIX

42.    The United States hereby gives notice to the defendants charged in Count Six that, upon their conviction of such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offense to forfeit any property, real or personal, involved in such offense, or

32

any property traceable to such property, including but not limited to at least a sum of

approximately $250 million in United States currency.

43.     If any of the above-described forfeitable property, as a result of any act

or omission of the defendants:

        (a)     cannot be located upon the exercise of due diligence;

        (b)     has been transferred or sold to, or deposited with, a third party;

        (c)     has been placed beyond the jurisdiction of the court;

        (d)     has been substantially diminished in value; or

        (e)     has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as

incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other

33

property of the defendants up to the value of the forfeitable property described in this forfeiture

allegation.

(Title 18, United States Code, Section 982(a)(1) and 982(b)(1); Title 21, United

States Code, Section 853(p))

A TRUE BILL

████████████████████

_____

FOREPERSON

_____

ROBERT L. CAPERS
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

BY: _____
ACTING UNITED STATES ATTORNEY
PURSUANT TO 28 C.F.R. O.136

34

F. #2015R02080/OCDETF #NYNYE-801
FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

## THE UNITED STATES OF AMERICA

*vs.*

█████████████████████ *et al.,*

Defendants.

## SUPERSEDING INDICTMENT

( T. 21, U.S.C., §§ 841(b)(1)(A)(i), 841(b)(1)(A)(ii)(II), 841(b)(1)(A)(vii),
841(b)(1)(A)(viii), 846, 848(a), 848(b), 848(c), 853(a), 853(p), 959(d),
960(b)(1)(A), 960(b)(1)(B)(ii), 960(b)(1)(G), 960(b)(1)(H) and 963; T. 18,
U.S.C., §§ 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(A)(iii), 924(d)(1),
982(a)(1), 982(b)(1), 1956(h), 2, 3238 and 3551 et seq.; T. 28, U.S.C.,
§ 2461(c))

*A true bill.*

████████████████████████████

_ _ _ _ _ _ _ _ _ _ _ _                                          _ _ _ _ _ _ _ _ _ _
                                                                       *Foreperson*

*Filed in open court this* _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ *day,*

*of* _ _ _ _ _ _ _ _ _ _ _ _ _ *A.D. 20* _ _ _ _ _

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
                                                                              *Clerk*

*Bail, $* _ _ _ _ _ _ _ _ _ _ _

Michael P. Robotti, Assistant U.S. Attorney, (718) 254-7576
Craig R. Heeren, Assistant U.S. Attorney, (718) 254-6467